1    HONORABLE RONALD B. LEIGHTON

2

3

4

5

6
        UNITED STATES DISTRICT COURT
7       WESTERN DISTRICT OF WASHINGTON
                 AT TACOMA
8

NEW YORK LIFE INSURANCE
9    COMPANY,

10              Plaintiff-in-Interpleader,
                                              CASE NO. C12-5184-RBL
11        v.
                                              ORDER DENYING CHARLES
12   MICHAEL CRAIG POWELL; ALINA              COX'S MOTION FOR PARTIAL
     DAWN POWELL; JOHN SAMUEL                 SUMMARY JUDGMENT
13   POWELL; JENNIFER RAE GRAVES;
     STEVEN CRAIG POWELL; TERRICA             (Dkt. #76)
14   POWELL; THE ESTATE OF SUSAN
     POWELL, an absentee person; SUSAN
15   POWELL, or her successor in trust, as
     Trustee of the Joshua S. Powell and Susan
16   M. Powell Revocable Trust, u/a/d
     February 4, 2009; CHARLES F. COX;
17   and JUDY COX,

18              Defendants-in-Interpleader.

19
         THIS MATTER is before the Court on Charles Cox's Motion for Partial Summary
20
     Judgment (Dkt. #76).  New York Life Insurance Company issued a term life insurance policy to
21
     Joshua Powell as the owner and primary insured.  Joshua named his wife, Susan Powell, as the
22
     primary beneficiary, and their Revocable Trust as the secondary beneficiary.  Two years later,
23
     Susan disappeared from her home in Utah.  Shortly after Susan's disappearance, Joshua moved
24

1

1   to Washington.  He then removed Susan and the Trust as beneficiaries on his policy and replaced

2   them with his family members.  After Joshua died in a house fire, his siblings submitted claim

3   forms to New York Life seeking death benefits under Joshua's policy.

4        New York Life filed a complaint-in-interpleader concerning the proceeds of Joshua's

5   insurance policy.  Cox, as conservator of Susan Powell's estate, moves for partial summary

6   judgment, arguing that Joshua's beneficiary changes are void because they violate his fiduciary

7   duties to the Revocable Trust.  Implicit in this argument is that Susan remains the primary

8   beneficiary and is thus entitled to the policy proceeds.  Michael and Terrica Powell oppose the

9   motion.  Since Joshua's fiduciary duty under the Revocable Trust did not extend to his insurance

10   policy, Cox's Motion for Partial Summary Judgment is DENIED.

11                                    **I.    FACTS**

12        On August 2, 2007, New York Life issued a $1,000,000 five-year term life insurance

13   policy to Joshua as the owner and primary insured.  At the time the policy was issued, Joshua

14   and Susan were married and living in Utah.  The policy included two Other Covered Insured

15   Riders of $250,000 each on the lives of Joshua and Susan's two sons, for a total policy value of

16   $1,500,000.  Joshua named Susan as the primary beneficiary on the policy.

17        On February 4, 2009, Susan signed a Durable Springing Power of Attorney appointing

18   Joshua as her attorney-in-fact if she became incapacitated.  The same day, Joshua and Susan

19   executed a Revocable Trust that designated them both as grantors, trustees, and beneficiaries.

20   Joshua and Susan named Susan's father, Charles Cox, and Joshua's brother, Michael Powell, as

21   successor trustees.  The Trust was executed in Utah, and was subject to the laws of Utah.  On

22   February 5, 2009, Joshua added the Trust as the secondary beneficiary under his life insurance

23   policy, including both Riders.

24

On December 6, 2009, Susan disappeared from her home in Utah.  Her whereabouts are still unknown.  Joshua is considered a person of interest in Susan's disappearance.

Shortly after his wife's disappearance, Joshua moved to Washington, where he continued to make monthly premium payments on his life insurance policy.

On October 3, 2011, Joshua removed Susan as the primary beneficiary and replaced her with his siblings, Michael and Alina Powell, in equal shares.  Joshua also changed the secondary beneficiary from the Trust to his brother, John Powell.

On December 3, 2011, Joshua again changed the beneficiaries.  This time, he changed the primary beneficiaries to Michael (93%), Alina (4%), and John (3%).  Joshua also changed the secondary beneficiary to his father, Steven Powell.

On February 5, 2012, Joshua and his two sons died in a house fire in Washington.  Police suspect that Joshua intentionally started the fire in order to kill his children and commit suicide.  Nine days after Joshua's death, Michael and Alina contacted New York Life about making a claim on Joshua's life insurance policy.  Five days later, Michael, Alina, and John submitted claim forms to New York Life seeking death benefits under Joshua's policy.

New York Life filed a complaint-in-interpleader concerning the proceeds of Joshua's life insurance policy.  The complaint names Michael, Alina, John, and Steven Powell as defendants-in-interpleader.  The complaint also names Joshua's heirs at law, Jennifer Graves and Terrica Powell; Susan's parents, Charles and Judy Cox; Susan Powell or her successor in trust; and the Estate of Susan Powell, an absentee person.

On January 16, 2013, a Utah district court appointed Charles Cox—Susan's father—as the conservator of Susan's estate.  Cox moves for partial summary judgment, arguing that Joshua's life insurance beneficiary changes violate his fiduciary duties under the Trust.  Cox's

1  argument implies that Susan is still the primary beneficiary on Joshua's policy and is thus

2  entitled to the proceeds.  Michael[1] and Terrica oppose the motion, arguing that (1) Washington

3  community property laws apply, (2) Cox does not have standing to bring the motion, (3) Cox has

4  violated his fiduciary duties, (4) Joshua's beneficiary changes are valid under the Power of

5  Attorney, and (5) Cox has not rebutted the presumption that Susan consented to the beneficiary

6  changes.

7                                    **II.     DISCUSSION**

8          Summary judgment is appropriate when, viewing the facts in the light most favorable to

9  the nonmoving party, there is no genuine issue of material fact which would preclude summary

10  judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

11  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

12  interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

13  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

14  evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

15  *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

16  affect the outcome of the suit are irrelevant to the consideration of a motion for summary

17  judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

18  "summary judgment should be granted where the nonmoving party fails to offer evidence from

19  which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

20  1221.

21

22

23  _____

24  [1] Shortly after filing his response to Cox's motion, Michael committed suicide.  Cox has offered to stipulate to the substitution of Michael's estate.

4

**A.      Joshua Did Not Violate His Fiduciary Duty Under the Revocable Trust**

Cox argues that Joshua violated his fiduciary duty under the Revocable Trust when he removed Susan and the Trust as beneficiaries in favor of his family members, and therefore his beneficiary changes are void.  Def.'s Mot., Dkt. #76 at 5–8.

"A trust is a form of ownership in which the legal title to property is vested in a trustee." *Continental Bank & Trust Co. v. Country Club Mobile Estates, Ltd.*, 632 P.2d 869, 872 (Utah 1981).  A trustee has exclusive control over trust property.  *In re Estate of West*, 948 P.2d 351, 354 (Utah 1997).  This power is limited, however, by the trustee's "obligation as a fiduciary." *Id.* at 355.  Under Utah law, a trustee's fiduciary duty extends to the use of trust property.  *Id.*

Although the Trust was a beneficiary of the policy, it was not the owner—there is no evidence that the Trust paid the premiums from Trust property.  As a result, Joshua's fiduciary duty under the Trust does not extend to the insurance policy.  The Court cannot rule as a matter of law that Joshua violated his fiduciary duties under the Trust by changing beneficiaries on his insurance policy.

**B.      Washington Community Property Laws Apply to Joshua's Insurance Policy**

Cox also argues that Utah law applies to Joshua's insurance policy because Joshua acquired the policy while living in Utah.  Def.'s Reply, Dkt. #88 at 8.  Terrica and Michael argue that Washington community property laws apply, and therefore Joshua was entitled to pass his community interest in the policy to his siblings upon his death.  Def.'s Resp., Dkt. #83 at 4–5; Def.'s Resp., Dkt. #86 at 9.

In Washington, a term life insurance policy is classified as community or separate property depending on the character of the funds used to make the last premium payment.  *Aetna Life Ins. Co. v. Wadsworth*, 689 P.2d 46, 50 (Wash. 1984).  A term policy is community property

1    if community funds were used to make the last payment.  *Id.* at 51.  Conversely, a term policy is

2    separate property if separate funds were used to make the last payment.  *Id.*  There is a strong

3    presumption in Washington that assets acquired during marriage are community property.  Wash.

4    Rev. Code § 26.16.030; *Aetna Life Ins. Co. v. Bunt*, 754 P.2d 993, 995 (Wash. 1988).

5         Joshua made premium payments on his term life insurance policy while domiciled in

6    Washington.  Joshua and Susan were still legally married during this time period, and there is no

7    evidence that Joshua made payments with separate funds.  It is therefore presumed that Joshua

8    used community funds to make the last premium payment on the policy.  As a result, Joshua's

9    insurance policy is community property.

10        Since the insurance policy is community property, Susan is entitled to one-half of the

11   proceeds.  *Wadsworth*, 689 P.2d at 51.  Upon his death, Joshua was entitled to dispose of one-

12   half of the insurance policy proceeds to individuals other than his wife.  *See* Wash. Rev. Code

13   § 26.16.030; *Wadsworth*, 689 P.2d at 53; *Francis v. Francis*, 573 P.2d 369, 373 (Wash. 1978).

14   **C.    Additional Issues**

15        The parties briefed additional issues that ultimately do not affect the outcome of the

16   Court's decision.  The Court, however, will briefly address each issue.

17        **1.    Cox, as Conservator of Susan's Estate, Has Standing to Bring this**
             **Motion**
18
19        Terrica and Michael argue Cox lacks standing to bring this motion because New York

20   Life did not name a conservator of Susan's estate as a party to this litigation.  Def.'s Resp., Dkt.

21   #83 at 3; Def.'s Resp., Dkt. #86 at 4.  Terrica and Michael also argue that Cox's conservatorship

22   was granted without notice to them.  *Id.*

23        New York Life named the Estate of Susan Powell, an absentee person, as a defendant-in-

24   interpleader in this action.  Susan's estate is therefore a party to these proceedings.  Susan is still

1    missing and her husband and children are deceased.  Accordingly, a Utah district court appointed

2    Cox as conservator of Susan's estate.  Bush Decl., Ex. A, Dkt. #84.

3           After being appointed as conservator, Cox filed a notice of appearance in all his

4    capacities in this case.  Dkt. #74.  Moreover, Cox had no duty to inform Michael or Terrica that

5    he was appointed as the conservator of Susan's estate.  Utah Code Ann. § 75-5-405.  As

6    conservator, Cox is entitled to "prosecute or defend actions, claims, or proceedings in any

7    jurisdiction for the protection of estate assets and of the conservator in the performance of the

8    conservator's duties."  Utah Code Ann. § 75-5-424(3)(x).  Thus, Cox has standing to bring this

9    motion on behalf of Susan's estate.

10                  **2.      Cox Has Not Violated His Fiduciary Duties**

11          Michael argues that Cox's appointment as conservator is contrary to his fiduciary duties

12   as a trustee under Joshua and Susan's Trust.  Def.'s Resp., Dkt. #86 at 8.  Joshua and Susan

13   named Cox as a successor trustee under the Trust.  Cox, however, has not yet been appointed as

14   a trustee.  Thus, Cox does not currently have a fiduciary duty under the Trust.  Utah Code Ann.

15   § 75-7-801.

16                  **3.      Joshua Was Not Authorized to Act Under the Durable Springing
                              Power of Attorney When He Made the Beneficiary Changes**

17

18          Terrica and Michael argue that the Durable Springing Power of Attorney signed by Susan

19   indicates that she consented to Joshua's beneficiary changes.  Def.'s Resp., Dkt. #83 at 3; Def.'s

20   Resp., Dkt. #86 at 7.  The Power of Attorney authorized Joshua to serve as Susan's attorney-in-

21   fact if she became incapacitated.  West Decl., Ex. 3 at 2, Dkt. 87.  As Susan's attorney-in-fact,

22   Joshua may designate and change beneficiaries of insurance policies insuring Susan's life.  *Id.* at

23   8.

24

The Power of Attorney does not become effective, however, until a court deems Susan incapacitated, two licensed physicians certify that Susan is incapacitated, or a court appoints her a guardian or conservator. *Id.* at 15–16.  At the time Joshua changed the beneficiaries, none of these three conditions had occurred.  Joshua was therefore not authorized to act under the Power of Attorney when he made the beneficiary changes.

> **4.      Cox Rebutted the Presumption that Susan Consented to the Beneficiary Changes**

Finally, Michael argues that Cox has not rebutted the presumption that Susan consented to Joshua's beneficiary changes.  Def.'s Resp., Dkt. #86 at 6–7.

In Washington, the spouse of an insured is presumed to consent to the insured's naming of a child, parent, brother, or sister of either of the spouses as a beneficiary in a life insurance policy.  Wash. Rev. Code § 48.18.440(2).  This presumption, however, is rebuttable and can be overcome with evidence.  *National Bank of Commerce v. Lutheran Bros.*, 246 P.2d 843, 846 (Wash. 1952).

Cox has sufficiently rebutted this presumption.  Considerable evidence in this case demonstrates that Susan did not consent to Joshua's beneficiary changes.  Susan disappeared under suspicious circumstances before Joshua changed the beneficiaries in his policy.  Indeed, Susan's absence made it impossible for her to be aware of and consent to Joshua's beneficiary changes.

If the presumption of consent stood firm in this case—where a person disappears under highly suspicious circumstances and her spouse is the primary suspect—it would not be a "presumption" but a rule.

1

### III.    CONCLUSION

2          Joshua's fiduciary duty under the Revocable Trust does not extend to the insurance

3  policy.  Thus, the Court cannot rule as a matter of law that Joshua violated his fiduciary duty by

4  changing the beneficiaries on his policy.  On this narrow issue, Cox's Motion for Partial

5  Summary Judgment (Dkt. #76) is **DENIED**.

6          Dated this 16th day of May, 2013.

7

8                         _____

                          RONALD B. LEIGHTON

9                         UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24