HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ESTATE OF MICHAEL CRAIG POWELL, et al., <br><br> Defendant. | CASE NO. C12-5184 RBL <br><br> ORDER |

THIS MATTER is before the Court on Charles Cox's motion for disbursement of funds (Dkt. #139) and the Powells' competing motion for disbursement of funds (Dkt. #143). The facts are well-known, mostly undisputed, and have been discussed at length in prior orders. Susan Powell went missing in December of 2009. Joshua moved to Washington in the aftermath of Susan's disappearance. In February of 2012, Joshua killed himself and the couple's two sons. This case is the fight over life insurance proceeds for policies covering Susan, Joshua, and the two boys' lives.

The Court has resolved most of the legal issues in prior orders. The only remaining issues are whether Washington's slayer statutes invalidate Joshua's beneficiary designations for the rider on his boys, and whether there are grounds to create a constructive trust for Susan's

ORDER - 1

benefit.[1]  Those issues can be decided on the record.  Once those issues are resolved, there is no reason to further delay disbursing all of the insurance proceeds in accordance with the Court's orders.

## I.    BACKGROUND

Because the facts of this case have been thoroughly discussed in prior orders, only the facts central to the remaining issues and distribution will be discussed here.  In 2009, Joshua and Susan Powell were married and living with their two sons in Utah.  Susan went missing on December 6, 2009, under suspicious circumstances.  Nobody has heard from her since, and her body has never been found.  Joshua was the police's primary suspect, but he was never charged with a crime.

Two weeks after Susan went missing and in the midst of the investigation into her disappearance, Joshua moved to Washington with his sons.  Joshua and Susan's parents, the Coxes, then engaged in a battle for custody of the boys.  On February 5, 2012, Joshua tragically killed himself and his sons during what was supposed to be a supervised visit.

Three life insurance policies are now at issue.  The first is a $500,000 Beneficial Life policy insuring Joshua's life.[2]  Joshua listed Susan as the primary beneficiary and the couple's revocable trust as the secondary beneficiary.  He did not change those beneficiary designations after Susan went missing.  The second policy is a $1,000,000 New York Life policy insuring

---

[1] The Powells argue that there is still a question of whether Susan consented to Joshua's beneficiary changes.  They do not argue that Susan actually consented to the changes.  Rather, they argue only that Cox has not sufficiently rebutted the presumption that Susan consented.  The Court has already considered this argument and rejected it.  *See* Dkt. 90.  It will not be discussed further.

[2] Policy number BL2112245

Susan's life.[3] She listed Joshua as the primary beneficiary and the Trust as the secondary beneficiary.

The last policy is a $1,000,000 New York Life policy insuring Joshua's life.[4] That policy also has two $250,000 riders attached, each insuring one boy's life. When Susan went missing, she was the primary beneficiary of Josh's policy, and the Trust was his secondary beneficiary. Josh and Susan were co-primary beneficiaries for the boys' riders in equal shares, and the Trust was the secondary beneficiary. But after Susan went missing, Josh made a number of beneficiary changes. In the final changes, Josh listed three of his siblings as co-primary beneficiaries of the New York policy insuring his life, but not in equal shares. Michael Powell was to get 93%, Alina Powell was to get 4%, and John Powell was to get 3%. For the boys' riders, Joshua listed himself as the primary beneficiary and Michael Powell as the secondary beneficiary.

In prior orders, the Court has ruled that Susan did not consent to Joshua's beneficiary changes (Dkt. 90); that Josh's New York Life policy was community property (Dkt. 90); and that Susan is presumed to be alive until December 6, 2014 (Dkt. 138). Although the presumption that Susan is alive can be rebutted, nobody has affirmatively stated an intention to do so. To date, no evidence has been presented to the Court by any party that identifies or establishes a triable issue regarding the fact or date of Susan's death. Accordingly, on March 25, 2014, the parties were ordered to inform the Court whether they intended to pursue an evidentiary hearing or trial to prove that Susan died at any time other than December 6, 2014. Cox responded that he did not.

---

[3] Policy number 48789198. The face amount is $500,000, but it has a rider for an additional $500,000.

[4] Policy number 48789237.

The Powells said that they wanted to "keep their options open on this issue" pending the outcome of a dispute in Utah State court over the Trust.[5]

While the Powells may want to keep their options open indefinitely while they posture in Utah State court, this Court has a live case and controversy that is ripe for consideration. The parties have been given ample opportunity to pursue the issue in this Court. Although presuming that Susan is alive may ultimately be a legal fiction, it is a legal fiction that was purposely and intentionally created for situations just like this. Accordingly, Susan is presumed to be alive and the insurance proceeds will be distributed accordingly.

## II.  DISCUSSION

Of the three policies, only Joshua's New York Life policy (and its two riders) is still in dispute. The Court has already determined that that policy is community property. Cox now contends that Washington's slayer statute prohibits any of Joshua's elected beneficiaries from receiving any of the rider proceeds. Cox also argues that the proceeds from Joshua's one-half interest in the policy should be placed in a constructive trust for Susan because Joshua allegedly caused her disappearance.

### 1.  The Washington Slayer Statutes Do Not Invalidate Joshua's Beneficiary Designations for His One-Half Interest in the Riders on his Boys

Cox contends that Joshua would impermissibly benefit from killing his sons if any of his designated beneficiaries receive any of the rider proceeds. Cox argues that Washington's slayer statutes prohibit Joshua not only from personally receiving money his sons' life insurance money, they also prohibit him from controlling who receives that money. The Powells contend that while the slayer statutes would have precluded Joshua from personally receiving the

---

[5] Additionally, the Court struck the trial date based on the parties' representations that there were no issues for trial.

proceeds, the statutes do not divest him of his ownership interest in the life insurance policy and his right to designate beneficiaries.

The "slayer rule," which most states have codified, including Washington, serves an important, limited purpose. Generally, the slayer rule prevents a killer from benefiting from the death that he or she wrongfully caused. The rule is not meant to be punitive or compensatory. *Armstrong v. Bray*, 64 Wash.App. 736, 741, 826 P.2d 706, 709 (1992); *see also* Restatement (Third) of Property § 8.4 cmt. a (2003). It is not meant to invade the realm of tort law. Its limited purpose is to prevent the killer from being unjustly enriched. *Id.*

The Washington Legislature has codified the slayer rule at RCW 11.84.010 *et seq.* A "slayer" is defined as any person who willfully and unlawfully kills another person, or any person who is an accessory before the fact to a willful and unlawful killing. RCW 11.84.010(5). The general rule that a slayer cannot benefit from his wrongful act is stated at RCW 11.84.020: "No slayer or abuser shall in any way acquire any property or receive any benefit as the result of the death of the decedent . . . ." According to RCW 11.84.100, which specifically addresses life insurance proceeds, if the slayer is the named primary beneficiary for a policy that insures the victim's life, the proceeds should instead be paid to the secondary beneficiary if there is one:

> Insurance proceeds payable to the slayer or abuser as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid instead to the estate of the decedent, *unless* the policy or certificate designate some person other than the slayer or abuser or his or her estate as secondary beneficiary to him or her and *in which case such proceeds shall be paid to such secondary beneficiary in accordance with the applicable terms of the policy*.

RCW 11.84.100(1) (emphasis added).

Instead of applying the plain language of the statute that directly addresses life insurance proceeds, Cox asks the Court to take an expansive view of what "benefit" means and

to apply the general rule that prohibits a slayer from benefiting in any way.  Cox contends that applying Joshua's beneficiary designations would posthumously confer a benefit on him by giving him control over who receives the proceeds.

Cox is unable to cite any authority from any jurisdiction that supports his interpretation, likely because no court has construed a slayer statute in such a broad manner.  Indeed, his argument that the general slayer statute should control over the statute that specifically addresses insurance proceeds conflicts the well-known rule of statutory construction that specific statutes prevail over the general.  *See Knowles v. Holly*, 82 Wash.2d 694, 702, 513 P.2d 18, 23 (1973).  Neither Joshua nor his estate will be unjustly enriched if his one-half interest in the rider proceeds is distributed according to the terms of the policy as RCW 11.84.100 instructs that it must.

### 2.     There are no Grounds to Create a Constructive Trust

Cox also argues that Joshua's one-half interest in the New York Life policy insuring his life should be placed in a constructive trust for Susan's benefit.  Cox claims that he can prove at trial that Joshua caused Susan's disappearance.  Because Susan was the primary beneficiary of Joshua's New York Life policy when she went missing, Cox contends that Joshua's subsequent beneficiary changes deprived Susan of her interest in that policy.

Cox's argument ignores the fact that Joshua's beneficiary changes would have been permissible even if Susan had not gone missing.  The Court has already concluded that Joshua's New York Life policy was community property.  In the prior order, the Court ruled that Joshua could not divest Susan of her one-half communal interest in the policy by changing the beneficiaries without her consent.  Implicit in that order is that Joshua could legitimately name someone other than Susan as the beneficiary for his one-half communal interest in the policy. *See Francis v. Francis*, 89 Wn.2d 511, 573 P.2d 369 (1978).  His doing so did not deprive Susan

of any interest, and Joshua's named beneficiaries will not be unjustly enriched if his changes are given effect. A constructive trust is not appropriate, and the Court will not impose one.

### 3.     Distribution

New York Life deposited $1,057,863.01 for the primary benefit covering Joshua. Because the policy was community property, Susan is entitled to one-half of that principal amount ($528,931.51) and one-half of the interest that has accrued since it was deposited. Accordingly, 50% of the principal and the accrued interest will be distributed to the conservator of Susan's estate.

Joshua's one-half interest in the policy will be distributed according to his beneficiary designations. Accordingly, Michael Powell's estate is entitled to 46.5% of the principal ($491,906.30) and the accrued interest; Alina Powell is entitled to 2% of the principal ($21,157.26) and the accrued interest; and John Powell is entitled to 1.5% of the principal ($15,867.94) and the accrued interest.

New York Life deposited a total of $528,931.50 for the riders that covered the boys ($264,465.75 for each of the riders). Again, because the policy was community property, Susan is entitled to 50% of that principal amount ($264,465.75) and the interest that has accrued. Michael Powell's estate is entitled to the other 50% of the principal ($264,465.75) and accrued interest as Joshua's elected beneficiary.

### B.     Joshua's Beneficial Life Policy

Although he made numerous changes to his New York Life policy beneficiary designations after Susan went missing, Joshua did not make any changes to his Beneficial Life policy. Accordingly, Susan is still the primary beneficiary. Because Joshua legally predeceased Susan, Susan is entitled to 100% of the Beneficial Life proceeds and all of the accrued interest.

C.   **Susan's New York Life Policy**

Susan named Joshua as the primary beneficiary and the Trust as the secondary beneficiary. Because Joshua legally predeceased Susan, 100% of the proceeds and accrued interest shall be paid to the Trust as the secondary beneficiary. Although Susan's date of death has not yet occurred, the Court sees no reason to delay distributing the funds. If any of the parties have any objection to immediately distributing the funds, they should submit their written objections to the Court within 10 days of this Order.

### III.   CONCLUSION

The slayer statutes do not invalidate Joshua's beneficiary designations for his one-half interest in the riders covering his boys. There are no grounds to place the proceeds from Joshua's one-half interest in his New York Life policy into a constructive trust for Susan's benefit. Thus, applying the Court's prior orders and the applicable beneficiary designations, the insurance proceeds are to be distributed as follows:

<u>Joshua's New York Life Policy ($1,057,863.01)</u>

- Susan's conservator:  $528,931.51 plus 50% of the accrued interest;
- Michael Powell's estate:  $491,906.30 plus 46.5% of the accrued interest;
- Alina Powell:  $21,157.26 plus 2% of the accrued interest;
- John Powell:  $15,867.94 plus 1.5% of the accrued interest;

<u>New York Life Rider Covering Boys ($528,931.50)</u>

- Susan's conservator:  $264,465.75 plus 50% of the accrued interest;
- Michael Powell's estate:  $264,465.75 plus 50% of the accrued interest;

<u>Susan's New York Life Policy</u>

- The Trust:  100% of the principal and accrued interest;

<u>Joshua's Beneficial Life Policy</u>

- Susan's conservator:  100% of the principal and accrued interest.

If any party objects to the immediate distribution of Susan's New York Life policy proceeds, they should submit their written objections to the Court within 10 days of this Order. The parties who are entitled to any of the proceeds are to submit a proposed judgment that reflects this Order and complies with Local Rule 67.  All other pending motions are denied as moot.  IT IS SO ORDERED.

Dated this 14th day of May, 2014.

*[signature]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE